OPINION
Plaintiffs, Bruce and Debra Miller, appeal from a summary judgment entered in favor of Dayton Power and Light Company (DPL) on Plaintiffs' claims for personal injuries and loss of consortium.
Bruce Miller owns and operates an auto repair and towing business. On May 21, 1996, Miller towed Lance Johnson's Chevrolet S-10 pick-up truck to Brownie's Independent Transmission in Kettering, for service. Miller did not know what was wrong with the vehicle when he picked it up.
When Miller arrived at Brownie's, only one parking space remained in the parking lot. It was a parallel parking space abutting a grassy median on which a DPL utility pole stood. The utility pole had energized riser poles fixed to each side, running from out of the ground to the top of the pole.
Miller lowered Johnson's pick-up truck and unhooked it from his tow truck. Miller then started the pick-up and began to parallel park it in the space available, using the rear view mirror. Miller left the driver's side door open while he attempted to park the vehicle, though nothing prevented him from closing it.
As Miller backed the pick-up into the available parking space, the door opened wider. Miller stopped the vehicle when the door struck the utility pole. When he looked down, Miller saw that smoke was coming out of the vehicle near his left foot, from the left kick panel. Miller got out of the pick-up truck, and as he did he saw that the brown insulating paper between the door panel and the driver's side door had caught fire. He suspected that the wires in the door had ignited.
Miller walked to the back of the vehicle, where he remained for thirty seconds to three minutes. Miller saw more smoke rolling out of the pick-up from between the fender and the hood.
Miller had experienced vehicles catching fire while he worked on them at his garage. His experience led him to believe that if he turned off the ignition, electrical current would stop flowing through the wires and Johnson's vehicle might not burn up. Miller walked back to the driver's side of the pick-up, then reached inside and turned off the ignition. Both of Miller's feet were on the ground outside when he shut off the ignition.
Miller heard an explosion as a ball of flame came out of the vehicle toward him. Miller was set afire. Employees of Brownie's rolled Miller on the ground and doused him with water from a garden house to put out the flames. Miller was taken to Miami Valley Hospital with burns over thirty percent of his body. Miller spent ten days in the hospital. Miller testified that he experienced a great deal of pain as a result of his injuries. Although his burns did not require surgery or skin grafts, Miller went through rehabilitation treatment as a result of his injuries.
Debra Miller's insurance paid for all of her husband's medical bills. However, Miller was not covered by worker's compensation because he was the owner of his business. Miller was unable to work on vehicles for approximately six months after his accident.
Bruce and Debra Miller filed a complaint against DPL, alleging that DPL had negligently breached its duty to protect Bruce Miller from reasonably foreseeable injury. Bruce Miller sought damages for his expenses and pain and suffering and Debra Miller sought damages for her loss of consortium.
DPL filed an answer and counterclaim, alleging that Miller was negligent in operating the vehicle and seeking damages for the damage done to its utility pole. DPL subsequently moved for summary judgment.
The trial court found that Miller's conduct was independent acts of negligence from which his injuries arose. The trial court then sustained DPL's motion for summary judgment, stating that "in backing up the truck with the door open, in full knowledge of the presence of the pole, and in entering a truck emitting flames and smoke to try to put out the fire, Miller acted negligently. Both negligent acts would supersede any negligent act on the part of DPL in positioning the riser cables as it did."
The Millers timely appealed, presenting two assignments of error.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DPL BY HOLDING THAT MR. MILLER'S ACTIONS CONSTITUTED INDEPENDENT ACTS OF NEGLIGENCE WHICH SUBSTANTIALLY CAUSED HIS OWN INJURIES.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DPL BY HOLDING THAT MR. MILLER'S ACTS SUPERSEDE ANY NEGLIGENT ACT ON THE PART OF DPL IN POSITIONING THE RISER CABLES AS IT DID IN AN UNSAFE POSITION.
The trial court granted summary judgment for DPL on its intervening/superseding negligence defense. Although DPL specifically denies any negligence in the location or maintenance of its utility pole, an intervening/superseding negligence claim operates as an affirmative defense in the nature of a confession and avoidance. It admits for pleading purposes only that the plaintiff has a claim (the "confession") but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the "avoidance").
Civ.R. 56(B) authorizes a party against whom a claim is made to move summary judgment in his favor. The court is required to enter judgment on the claim for the movant if the evidentiary materials before the court demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. A defendant is entitled to judgment as a matter of law if the plaintiff cannot prove all the essential elements of his claim for relief or the defendant cannot be held liable on it.
A defendant who is alleged to be responsible because of its negligence for injuries that a plaintiff suffered may be relieved of liability for those injuries by reason of a break in the chain of causation resulting from the plaintiff's own negligent act. The defendant is not relieved of liability if his negligence and that of the plaintiff cooperated to proximately cause the injury, each continuing to the point of injury and contributing substantially to it. Garbe v. Halloran (1948), 150 Ohio St. 476. Then, no break has occurred in the chain of causation between the defendant's negligence and the plaintiff's injuries and losses.
A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard.Hurt v. Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 323,58 O.O. 119, 130 N.E.2d 824, paragraph one of the syllabus; Thrash v.U-Drive-It Co. (1953), 158 Ohio St. 465, 49 O.O. 402,110 N.E.2d 419, paragraph two of the syllabus. However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury.
Berdyck v. Shinde (1993), 66 Ohio St.3d 573, 584-585.
The record demonstrates two independent acts of negligence on Miller's part. The first occurred when Miller backed the truck into the utility pole, producing the electrical contact that caused the truck to catch fire. Because DPL's alleged negligence cooperated with Miller's in producing that result, DPL cannot be relieved of liability because Miller's own negligence was not an efficient, independent, and self-producing cause of the fire that occurred. Id. Therefore, the trial court erred when it held that Miller's act of backing the truck into the pole intervened to supersede the negligence of DPL that Miller alleged.
Miller's second negligent act was in returning to the truck to turn off its ignition after having seen fire and smoke emerge from the truck. Miller argues that he was justified in returning to the truck for that purpose for two reasons. First, because he had an obligation to protect the truck from being destroyed by the fire, an obligation he owed to its owner by reason of the bailment involved. Second, because his experience had caused him to conclude that the flames could be quelled by turning off the truck's ignition as he did. Miller further argues that whether either of those matters relieves him of responsibility for his injuries is an issue of fact for the jury, which may not be the basis of a summary judgment granted by the court.
The two matters on which Miller relies implicate thatstandard of conduct required of a person in his situation toavoid the foreseeable risk of harm that the burning truckpresented. Standard of conduct presents a question of fact, whichmust be decided by a jury. However, if reasonable minds couldonly conclude that the risk of harm foreseeable as a matter of lawto a person in Miller's situation required him to stay free of theburning truck, Miller's failure to do that demonstrates a breachof the duty to care for his own safety which the law imposes.Foreseeability is an element of duty, which is a matter of law for the court to decide.
We agree with the trial court that Miller breached the duty imposed on him by law to care for his own safety when he returned to the burning truck. That breach is not excused by either of the justifications he offers. We also agree that Miller's conduct and the breach it involved operate to relieve DPL of any liability for DPL's alleged negligence because it constitutes a break in the chain of causation for Miller's injuries.
Miller was injured when the truck exploded. The explosion resulted from a fire that was ignited by an electrical charge from DPL's utility pole. Miller could and should have eliminated the hazard to his own safety that the fire presented by staying away from the burning truck. Instead, he re-entered the truck, exposing himself to the hazard from which his injury resulted. His conduct in doing so, once he saw that the truck was on fire, was disconnected from the alleged negligence of DPL and was of itself an efficient, independent and self-producing cause of the injuries he suffered. Berdyck v. Shinde, supra.
As a final matter, Miller suggests that a breach of DPL's particular duty of care is not avoided by any intervening/superseding negligence on his part. An electrical utility is required to exercise the highest degree of care consistent with the practical operation ofits business in the construction, maintenance, and operation of itsequipment, and is responsible for conduct falling below thatstandard. Hetrick v. Marion-Reserve Power Co. (1943),141 Ohio St. 347; Otte v. Dayton Power Light Co. (1988),37 Ohio St.3d 33. Nevertheless, the utility may yet be relieved of liability for injuries arising from a hazard which a breach of even that elevated duty creates by the intervention of a conscious and responsible agency which could have avoided the hazard, but didn't, so long as the agency is of itself an efficient, independent, and self-producing cause of the injury involved. Then, the actor's conscious decision to act as he did operates to cut off the utility's liability.
There are situations in which an unwary actor submits himself to the risk of harm that electrical equipment presents, doing so voluntarily and even recklessly. Then, the utility may yet be liable for the harm that results. Here, however, the risk to which Miller voluntarily elected to submit himself was the risk of harm from the burning truck, not from DPL's electrical utility pole. Further, the nature of that risk, injury from the fire that had started, was open and obvious, not one that was in any way concealed by the equipment concerned. In this situation, we cannot find that DPL's elevated duty of care preserves its alleged liability over Miller's own superseding negligence.
The assignments of error are overruled. The judgment of the trial court will be affirmed.
WOLFF, J. concurs.
KERNS, J., dissents.
Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.